IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BENJAMIN M. LUCERO,

       Plaintiff,

v.                                                      CV 19-0114 JHR

ANDREW M. SAUL,[1]
Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

      This matter comes before the Court on Plaintiff Benjamin M. Lucero's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17], filed July 9, 2019. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge resolving Mr. Lucero's Motion and entering final judgment in this case. [Docs. 4, 7, 8]. For the following reasons, the Court **grants** Mr. Lucero's Motion, **reverses** the Commissioner's Final Decision denying him benefits under the Social Security Act, and **remands** this case for further administrative proceedings.

## I.    INTRODUCTION

      Stare decisis is "[t]he doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation." BLACK'S LAW DICTIONARY (11th ed. 2019). "This doctrine is simply that, when a point or principle of law has been once officially decided or settled by the ruling of a competent court in a case in which it is directly and necessarily

---

[1] Andrew M. Saul was automatically substituted as the Defendant in this action pursuant to Fed. R. Civ. P. 25(d) when he was sworn in as the Commissioner of Social Security on June 17, 2019, replacing former Acting Commissioner Nancy A. Berryhill.

involved, it will no longer be considered as open to examination or to a new ruling by the same tribunal … unless it be for urgent reasons and in exceptional cases." *Id.* (quoting William M. Lile et al., Brief Making and the Use of Law Books, 321 (Roger W. Cooley & Charles Lesley Ames eds., 3d ed. 1914)). Thus, as the Supreme Court recently reiterated, "[o]verruling precedent is never a small matter [because] … [a]dherence to precedent is 'a foundation stone of the rule of law.…' [I]t promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Kisor v. Wilkie*, 139 S.Ct. 2400, 2422 (2019) (quoting *Kimble v. Marvel Entertainment, LLC*, 135 S.Ct. 2401, 2409, (2015); *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 798, (2014); and *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). The Court finds itself once again bound by the principles of stare decisis in this case.

This Court very recently addressed two of the issues presented by Mr. Lucero in another Social Security appeal: (1) whether an Administrative Law Judge's ("ALJ") decision to restrict a claimant's residual function capacity ("RFC") to performing "simple, routine tasks" is inconsistent with jobs requiring level three reasoning under the General Education Development ("GED") scale in the Dictionary of Occupational Titles ("DOT"); and, (2) whether an ALJ must analyze the factual underpinnings of a claimant's ability to access the jobs identified by the ALJ to deny benefits at Step Five where the number of jobs relied on does not rise to the level of "significant numbers" in the national economy as a matter of law. *See Ammons v. Saul*, CV 18-1212 JHR, Doc. 23 (D.N.M. Mar. 23, 2020). *Ammons* in turn relied on this Court's rationale in remanding other cases that turned on these two issues. *See id.*, pp. 12-13, 15 (citing *Salazar Trujillo v. Saul*, CV 18-1134 JHR, Doc. 25 (D.N.M. Jan. 21, 2020); *Figueroa v. Saul*, CV 18-0885 JHR, 2019 WL 3766184 (D.N.M. Aug. 9, 2019); *Laney v. Berryhill*, CV 17-1062 JHR, 2019 WL 586660 (D.N.M.

Feb. 12, 2019); *Roybal v. Berryhill*, CV 17-1045 JHR, 2019 WL 318387 (D.N.M. Jan. 24, 2019); *Crockett v. Berryhill*, CV 17-0955 JHR, 2018 WL 6250602 (D.N.M. Nov. 29, 2018); and *Brandenburg v. Berryhill*, CV 17-0507 JB/JHR, Doc. 27 (D.N.M. May 25, 2018), *report and recommendation adopted*, 2018 WL 3062591 (D.N.M. June 21, 2018)). Of course, the Court could not expect the parties to rely on *Ammons* in this case, given that the briefing here was completed in October 2019, [Doc. 24], and *Ammons* was not issued until March 2020. Still, as Mr. Lucero's briefing recites, at least *some* of the decisions supporting *Ammons*' analysis (notably *Laney* and *Roybal*) were decided before the Commissioner filed his Response brief in this case on October 16, 2019. As such, the result here should come as no surprise.

Like the claimant in *Ammons*, Mr. Lucero argues that the Commissioner's Final Decision on his claim for benefits is not supported by law or substantial evidence for two reasons. First, Mr. Lucero argues that the ALJ who decided the claim failed to support his Step Five conclusion that Mr. Lucero can still work with substantial evidence because he failed to resolve conflicts between two of the three jobs he relied on (which require level three (3) reasoning on the GED scale) and Mr. Lucero's RFC, leaving only 6,000 national jobs available to him (which is not enough to meet the Commissioner's burden when denying benefits). [*See* Doc. 17, pp. 11-14]. Second, Mr. Lucero argues that, because the ALJ failed to identify a "significant" number of jobs available to him at Step Five, the Commissioner's decision to deny benefits is unsupported by substantial evidence because he did not analyze his ability to access the few jobs available to him as required by *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). [*See* Doc. 17, pp. 14-16]. Having considered the Commissioner's arguments in opposition, reviewed the pertinent portions of the Administrative Record ("*AR*")[2] and all pertinent authority, the Court agrees with Mr. Lucero that: (1) two of the

---

[2] Documents 12 through 12-9 comprise the sealed Certified Transcript of the Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

jobs relied on by the ALJ to deny him benefits are inconsistent with his RFC, leaving an insufficient number of jobs to meet the Commissioner's burden at Step Five; and, (2) even if these conflicts were ignored, the original number of jobs the ALJ identified (59,000) is not "significant" as a matter of Tenth Circuit law, meaning that he was required to examine Mr. Ammons' ability to access those jobs under *Trimiar*. Because the ALJ committed these errors his Step Five findings are not supported by law or substantial evidence, and the Court must reverse and remand the Commissioner's Final Decision for further analysis.

## II.   PROCEDURAL HISTORY

Mr. Lucero applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act on December 17, 2014. *See AR* at 21, 117-118, 147-148, 261.[3] In support of his applications Mr. Lucero alleged a disability onset date of January 29, 2014, the date he stopped working due to "metal rod in leg and pins" and knee pain. *See AR* at 326. The Administration denied Mr. Lucero's applications initially and upon reconsideration, so he requested a de novo hearing before an ALJ. *AR* at 98-168.

ALJ Stephen Gontis ("the ALJ") held a hearing on Mr. Lucero's applications on November 15, 2017 at which Mr. Lucero and Vocational Expert ("VE") Marsha Heald were questioned by the ALJ and his attorney. *See AR* at 45-97, 393.[4] Among other things, Mr. Lucero testified that he was in a motorcycle accident in 2014 and has been unable to work since the accident due to

---

[3] While this application date is referenced in transmittal documents related to Mr. Lucero's claims and in the ALJ's decision, the Court was unable to locate Mr. Lucero's actual applications for benefits. However, the absence of the applications from the record does not affect this Court's analysis and Mr. Lucero's application date does not appear to be in dispute. [*See* Doc. 17, p. 3; Doc. 22, p. 2].

[4] There was some delay in setting Mr. Lucero's hearing, but not due to any fault of the Commissioner. The Administration set a hearing before ALJ James Burke on June 14, 2017. *AR* at 39-44. However, at that hearing Mr. Lucero submitted additional relevant evidence related to his mental health status, and the hearing had to be postponed so the administration could obtain the relevant medical records. [*Id.*]. It appears these records were obtained and made part of the record that was examined by ALJ Gontis when deciding Mr. Lucero's claim. *See AR* at 558-582, 1045-1046.

physical impairments resulting from it, a preexisting back injury, and mental health problems that were both preexisting and which were exacerbated by the accident. *See AR* at 59-79. He also testified that he was in special education classes in school, did not graduate from high school, and was unable to obtain his GED after his motorcycle accident due to pain and difficulty understanding instruction. *AR* at 57-58. Because of his conditions and related symptoms, Mr. Lucero told the ALJ he can no longer work in maintenance or construction and is unable to work even in a sedentary job setting. *See AR* at 57-62, 72-73. Nonetheless, when questioned by the ALJ, VE Heald testified that a person with Mr. Lucero's limitations and resulting residual functional capacity ("RFC") should be able to work as a document preparer, an addresser, and a callout operator, which represent a total of 59,000 jobs in the national economy. *AR* at 87-89.

On January 24, 2018, the ALJ issued an unfavorable decision, finding that Mr. Lucero retains the RFC to perform the jobs identified by VE Heald and is, therefore, not disabled under the Act. *AR* at 32. Mr. Lucero responded by submitting a request for review of the ALJ's decision to the Appeals Council on March 15, 2018. *AR* at 260. After reviewing his case, the Appeals Council denied Mr. Lucero's request for review on December 11, 2018. *AR* at 1-4. As such, the ALJ's decision denying benefits became the Final Decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Mr. Lucero initiated a timely appeal of the Commissioner's Final Decision by filing a Complaint in this Court on February 11, 2019. [*See* Doc. 1].

### III.     THE COMMISSIONER'S FINAL DECISION

A claimant seeking social security benefits under the Act must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(l)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[5]

At Step One of the sequential evaluation process the ALJ found that Mr. Lucero has not engaged in substantial gainful activity since his January 29, 2014 alleged onset date. *AR* at 23. At Step Two, the ALJ determined that Mr. Lucero "has the following severe impairments: reconstructive surgery of weight-bearing joint, fractures of lower extremity, depressive disorder, and post-traumatic stress disorder (PTSD)[.]" *AR* at 24. At Step Three, the ALJ concluded that Mr. Lucero's impairments do not meet or medically equal the regulatory "listings." *AR* at 24-26. Mr. Lucero does not challenge the ALJ's findings at Steps One through Three on appeal. [*See generally* Docs. 17, 23].

When a claimant does not meet a listed impairment at Step Three the ALJ must determine the extent to which he remains able to work (his RFC) before proceeding to identify past jobs he can still do at Step Four, or other jobs he can still do despite his limitations at Step Five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the least an individual can do despite his or her

---

[5] The Tenth Circuit summarized these steps in *Allman v. Colvin,* 813 F.3d 1326, 1333 n. l (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulations.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184, at *1. In this case the ALJ determined that Mr. Lucero retains the RFC to:

> lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently. [He] can stand and walk for two hours in an eight-hour workday and sit six hours in an eight-hour workday. He can frequently handle and finger with the right hand. He can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. [Mr. Lucero] can occasionally balance, kneel, crouch, and crawl and frequently stoop. He can never work at unprotected heights or extreme cold. [He] can understand, remember, and carry out instructions and can perform simple, routine tasks. He is limited to frequent interaction with supervisors and coworkers, and occasional contact with the public. [He] can tolerate few changes in a routine work setting. His time off-task can be accommodated by normal breaks.

*AR* at 26.

Employing this RFC at Step Four and relying on VE Heald's testimony, the ALJ determined that Mr. Lucero's impairments preclude him from returning to his past relevant work in maintenance and construction. *AR* at 31. However, relying again on VE Heald's testimony, as well as Mr. Lucero's age, education and work experience, the ALJ concluded that Mr. Lucero retains the ability to work as a document preparer (DOT # 249.587-018; 47,000 jobs in the national economy), an addresser (DOT # 209.587-010; 6,000 jobs in the national economy), or a callout operator (DOT # 237.367-014; 6,000 jobs in the national economy), and that these jobs together exist in "significant numbers in the national economy." *AR* at 32. As, such, the ALJ determined that Mr. Lucero does not qualify as disabled under the Act and denied benefits. *Id.*

## IV. <u>LEGAL STANDARDS</u>

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[T]he agency's 'failure to apply the correct legal

standards, or to show [the Court] that it has done so' is 'grounds for reversal.'" *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 640 (10th Cir. 2018) (unpublished) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

## V.    **ANALYSIS**

In addition to the Step Five errors requiring remand, Mr. Lucero argues that the ALJ failed to account for his subjective allegations of pain and other symptoms when formulating his RFC [*See* Doc. 17, pp. 16-21]. Because the Court concludes that the ALJ erred as a matter of law by failing to resolve an apparent conflict between Mr. Lucero's RFC and two of the jobs identified by the VE, and further erred by failing to support his decision to deny benefits at Step Five with substantial evidence by identifying a significant number of national jobs within Mr. Lucero's RFC or analyzing his ability to access the jobs within his RFC, the Court will not address Mr. Lucero's alternative RFC-based arguments "because they may be affected [or rendered moot] by the [Administration]'s treatment of [his] case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bryant*, 2018 WL 6133387, at *5 (citing *Watkins* for this proposition).

**A.  The ALJ failed to identify and resolve an apparent conflict between Mr. Lucero's RFC and the GED reasoning levels of two of the three jobs identified by the VE. If those jobs are excluded, there are too few national jobs remaining to be "significant" as a matter of law and meet the Administration's burden at Step Five.**

As noted, the ALJ concluded that Mr. Lucero retains the RFC to work as document preparer (DOT # 249.587-018; 47,000 jobs in the national economy),[6] an addresser (DOT # 209.587-010;

---

[6] As set forth in the DOT, a document preparer "[p]repares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices[; c]uts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife[; r]eproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify [a microfilm camera operator] of special handling, such as manual repositioning, during microfilming[; p]repares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify

6,000 jobs in the national economy),[7] and a callout operator (DOT # 237.367-014; 6,000 jobs in the national economy).[8] *AR* at 32. Together, these jobs total 59,000 positions in the national economy. However, as Mr. Lucero points out, two of the jobs (document preparer and call-out operator) require level three GED reasoning.[9] [*See* Doc. 17, pp. 12-13]. Relying on *Hackett v. Barnhart*, 395 F.3d 1168, 1174-1175 (10th Cir. 2005), Mr. Lucero argues that the document preparer and call-out operator positions must, therefore, be excluded from the ALJ's analysis because they are inconsistent with his RFC's limitation to performing "simple, routine tasks." *See* [Doc. 17, pp. 12-14; Doc. 23, pp. 2-3]; *AR* at 26. If these jobs are excluded, then there are only 6,000 addresser jobs available to Mr. Lucero under the ALJ's reasoning and, as the Commissioner rightly concedes, 6,000 national jobs is too few for the Court to find the ALJ's error to be "harmless." [*See* Doc. 22, p. 16 (citing *Sears v. Berryhill*, CV 17-0391 JB/KBM, 2018 WL 2002487, at *8-11 (D.N.M. Apr. 30, 2018))]. Thus, if the document preparer and call-out operator jobs are excluded as inconsistent with Mr. Lucero's RFC, remand is required.

As the Court recently reiterated in the *Ammons* decision, in *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999), the Tenth Circuit held "that the ALJ must investigate and elicit a

---

material[; and, i]nserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule." DOT # 249.587-018, 1991 WL 672349.

[7] An addresser "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing[; m]ay [also] sort mail." DOT # 209.587-010, 1991 WL 671797.

[8] A call-out operator "[c]ompiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone. Copies information onto form to update information for credit record on file, or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber." DOT # 237.367-014, 1991 WL 672186.

[9] As noted above, "GED" stands for "General Educational Development" and "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT App. C, § III, 191 WL 688702. "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* Pertinent to this case, there are 6 levels of Reasoning Development, with 1 representing the lowest level and 6 representing the highest. *Id.* Level three (3) reasoning requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[; and, to] "[d]eal with problems involving several concrete variables in or from standardized situations." *See* DOT # 249.587-018, 1991 WL 672349; DOT # 237.367-014, 1991 WL 672186.

reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." CV 18-1212 JHR, Doc. 23, p. 9. Closely following *Haddock*, the Commissioner issued SSR 00-4p, which discusses the "Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions." SSR 00-4p, 2000 WL 1898704. Pursuant to SSR 00-4p, "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." *Id.* at *2. "Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within [the ALJ's] duty [to develop the record]." *Haddock*, 196 F.3d at 1091; *see also* SSR 00-4p, 2000 WL 1898704 at *2 ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). This is an "affirmative responsibility" in which the ALJ must both "[a]sk the VE or VS if the evidence he or she has provided conflicts with the information provided in the DOT; and [i]f the VE's or VS's evidence appears to conflict with the DOT, … obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704 at *4.

The Tenth Circuit extended *Haddock* and SSR 00-4p's principles to GED reasoning levels in *Hackett*. *See* 395 F.3d at 1175-1176. There, as here, the claimant argued that her RFC, as formulated by the ALJ below, was inconsistent with jobs requiring level three (3) reasoning. *Id.* The Tenth Circuit agreed, holding that an apparent conflict existed between the claimant's RFC, which found that she "retain[ed] the attention, concentration, persistence and pace levels required for simple and routine work tasks[,]" and jobs requiring level three (3) reasoning. *Id.* In so finding,

the court noted that level two (2) reasoning appeared more consistent with the claimant's RFC. *Id.* ("We note that level-two reasoning requires the worker to 'apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations....' This level-two reasoning appears more consistent with Plaintiff's RFC.") (quoting DOT, Vol. II at 1011). The court accordingly reversed and remanded even though the claimant was represented by counsel before the ALJ and could very well have raised the apparent conflict at her hearing, thereby permitting the ALJ to explain or change his ruling without the need for additional litigation. *Id.*

Here, the ALJ failed to comply with SSR 00-4p, and in doing so, he erred. While the ALJ asked VE Heald if her testimony was consistent with the DOT, *see AR* at 89, he failed to identify the apparent conflict between Mr. Lucero's RFC, which limited him to "simple, routine tasks." *AR* at 26, and the document preparer and call-out operator positions, both which require level three (3) reasoning. *See* DOT # 249.587-018, 1991 WL 672349; DOT # 237.367-014, 1991 WL 672186. As such, the result in this case appears foreordained by the *Hackett* court's conclusion that an RFC limiting the mental demands on a claimant to "simple" tasks "seems inconsistent with the demands of level-three reasoning." *See Hackett*, 395 F.3d at 1176 (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997), which rejected the contention that "a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of *two* or higher." (emphasis added)).

Rather than addressing *Hackett* head-on, the Commissioner argues that Mr. Lucero's "argument ignores the fact that vocational experts consider a claimant's *entire* vocational profile in testifying about which jobs that particular claimant can do and otherwise blurs the definition of GED. And [his] argument also fails to show that there was an apparent conflict between the

vocational expert's testimony that would trigger the ALJ's duty to seek clarification." [Doc. 22, p. 11]. The Court rejects these arguments, for four reasons.

First, the unpublished case that the Commissioner relies on to argue that SVP,[10] not GED, controls [*see* Doc. 22, p. 13 (citing *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished))], does not establish that proposition. All that *Anderson* points out is that "GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development." *Anderson*, 514 F. App'x at 764. Moreover, *Anderson* was decided through the application of harmless error because, even "[a]ssuming there was a conflict between the VE's testimony and the DOT," there remained two jobs within the claimant's RFC, and she did not dispute that those jobs existed in "significant numbers." *Id.* As such, *Anderson* is inapposite. As Mr. Lucero argues, *Hackett* is controlling, notwithstanding *Anderson*'s observations about SVP and GED. [Doc. 23, pp. 2-3 (citing *Olguin v. Berryhill*, CV 18-0482 SCY, Doc. 25, pp. 9-10 (D.N.M. May 23, 2019))].[11]

---

[10] Specific Vocational Preparation (or "SVP") "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. This training may be acquired in a school, work, military, institutional, or vocational environment. It does not include the orientation time required of a fully qualified worker to become accustomed to the special conditions of any new job. Specific vocational training includes: vocational education, apprenticeship training, in-plant training, on-the-job training, and essential experience in other jobs." DOT, App'x C, 1991 WL 688702.

[11] Moreover, as was explained in *Ammons*, this Court has already concluded that level three (3) reasoning is inconsistent with an RFC limiting a claimant to simple tasks. *See* CV 18-1212 JHR, Doc. 23, p. 12. The Court's conclusion was based, in part, on *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished), where the Tenth Circuit relied on the Eighth Circuit's decision in *Lucy v. Chater* (which it also relied on in *Hackett*) for the proposition that "[w]hile we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions, the Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning." *Paulek*, 662 F. App'x at 594 (citing *Lucy*, 113 F.3d at 909). In other words, the Tenth Circuit appears to require an explanation by the Administration whenever a claimant who is limited to "simple" tasks is paired with level three (3) jobs. *Id.* Moreover, in *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019), the Fourth Circuit concluded that an apparent conflict existed where the claimant's RFC was limited to only short and simple instructions and the jobs relied on by the Administration required level two (2)

Second, the Commissioner's argument that the VE could rightfully conclude that the document preparer and call-out operator positions were within Mr. Lucero's RFC because his past jobs required level four reasoning and there is no evidence that he lost his reasoning ability [*see* Doc. 22, pp. 13-14], is unsupported. Perhaps recognizing this, the Commissioner points to no record evidence supporting his position that Mr. Lucero's reasoning ability was *not* affected by his motorcycle accident. The Court finds that Mr. Lucero's testimony contradicts the Commissioner's premise, *see AR* at 57-79, thereby foreclosing his conclusion.

Third, the Commissioner's alternative argument – that the ALJ actually complied with SSR 00-4p "despite [Mr. Lucero's] arguments to the contrary[,]" [Doc. 22, p.14] – ignores the record (which demonstrates mere boilerplate without actual analysis), *see AR* at 32, 89, and suggests that the ALJ has no duty to examine the jobs proffered by the VE for conflicts if the VE states that her testimony is "consistent with the DOT." [*See* Doc. 22, p. 14 (citing *AR* at 89)]. However, as explained above, SSR 00-4p imposes an "affirmative responsibility" on the ALJ to *both* ask the VE if her testimony conflicts with the DOT *and* to obtain a reasonable explanation for any apparent conflicts. SSR 00-4p, 2000 WL 1898704 at *4. In *Hackett* the Tenth Circuit identified an "apparent conflict between [the claimant's] inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Hackett*, 395 F.3d at 1176. Thus, contrary to the Commissioner's position, the ALJ was required by SSR 00-4p and *Hackett* to both identify, and then clarify, the apparent conflict between Mr. Lucero's RFC and the DOT's description of the document preparer and call-out operator positions to justify relying on them to deny Mr. Lucero benefits at Step Five.

reasoning. *Id.* While the Fourth Circuit was careful not to announce a "categorical rule," it made clear that a conflict requiring remand was apparent. *Id.*

Finally, the Court rejects the Commissioner's suggestion that the Court should ignore the ALJ's error because Mr. Lucero was represented by counsel at the hearing. [Doc. 22, p. 15]. This argument ignores established law. *See, e.g.*, *Hackett* 395 F.3d at 1175-1176 (where the court remanded despite the fact that the claimant was represented at the hearing). Contrary to the Commissioner's position, an ALJ's duty to ensure that the record is adequately developed at the hearing before him, while "not unqualified," "pertains even if the claimant is represented by counsel[]" because "administrative disability hearings are nonadversarial ... and the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Wall*, 561 F.3d at 1062-1063 (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)). The Commissioner's reliance on *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008), does not convince the Court otherwise. [*See* Doc. 22, p. 15]. The *Cowan* court's holding was that the record was complete enough for the ALJ in that case to make her determination. *Cowan*, 552 F.3d at 1187 ("Here, there was no need to further develop the record because sufficient information existed for the ALJ to make her disability determination."). The court's subsequent observation that "in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development[,] *id.* at 1188 (citing *Glass v. Shalala*, 43 F.3d 1392, 1394–1396 (10th Cir. 1994), does not relax the ALJ's affirmative duty if the record is in obvious need of development. *See Maes v. Astrue*, 522 F.3d 1093, 1097-1098 (10th Cir. 2008) (stating that "when the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue[,]" and remanding for further development of the evidence of the claimant's alleged mental impairment despite reiterating that it "will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete.") (citations omitted); *see also*

*Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) ("[T]he ALJ must develop the record consistent with the issues raised, even when a claimant is represented by counsel.") (quoted authority omitted). Thus, the fact that Mr. Lucero was represented at the hearing is irrelevant here.

Additionally, the Commissioner's position effectively ignores the law's recognition that, if the claimant successfully meets his burden to prove that he cannot return to his past work at Step Four of the sequential evaluation process, the burden shifts to the Commissioner at Step Five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given his age, education, and work experience. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Thus, whether a claimant is represented by counsel at the hearing is irrelevant if a claim is denied at Step Five because the Administration, not the claimant, bears the burden to support the denial with substantial evidence.

Therefore, having found that there was an apparent conflict between Mr. Lucero's RFC and the document preparer and call-out operator positions, and having rejected the Commissioner's arguments to the contrary, the Court must ignore those jobs. The result is that the ALJ identified only 6,000 national jobs within Mr. Lucero's RFC. As noted above, the Commissioner rightly concedes that 6,000 national jobs are not "significant" as a matter of law, precluding an application of harmless error by the Court in this case. [*See* Doc. 22, p. 16]; *see also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) ("Even assuming without deciding that [the claimant] is unable to work as a sales attendant or office helper, there is no colorable dispute that substantial record evidence supports the ALJ's conclusion that he can work as a rental clerk. Accordingly, the only question we must decide is whether or not that job exists in significant enough numbers."). As did *Ammons*, this case differs greatly from *Raymond*, where the claimant could not "dispute that 1.34 million rental clerk jobs in the national economy is a legally 'significant' number[.]" *Raymond*,

621 F.3d at 1274. And, as Mr. Lucero demonstrates through his briefing, this Court has consistently remanded claims where the number of national jobs is "far lower than 152,000" for consideration of the *Trimiar* factors. [*See* Doc. 23, pp. 4-5]; *see also, e.g.*, *Figueroa*, 2019 WL 3766184, at *3 (Observing that 152,000 is the lowest number of jobs the Tenth Circuit has determined to be "significant" enough to warrant the application of harmless error and concluding that the 56,000 national jobs at issue in that case were not "significant" enough to warrant the application of harmless error) (citing *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished)); *Ammons*, CV 18-1212 JHR, Doc. 23, pp. 14-17 (same result but applied to 56,600 national jobs); *Salazar Trujillo*, CV 18-1134 JHR, Doc. 25, p. 7 n.4 (suggesting that the Administration apply *Trimiar* on remand to a case involving 125,126 national jobs); *Laney*, 2019 WL 586660, at *6 (43,000 jobs); *Roybal*, 2019 WL 318387, at *7 (42,724 jobs); *Crockett*, 2018 WL 6250602, at *6 (6,400 jobs); and *Brandenburg*, CV 17-0507 JB/JHR, Doc. 27, p. 9 (5,200 jobs), *report and recommendation adopted*, 2018 WL 3062591. In other words, where, as here, an ALJ identifies fewer than 152,000 national jobs at Step Five, he must consider the *Trimiar* factors to ensure that the claimant can adequately access those jobs.

The Commissioner does not argue that the ALJ considered the *Trimiar* factors when denying benefits in this case (nor could he, since two of the jobs the ALJ identified and relied on for the total number of jobs conflict with Mr. Lucero's RFC). [*See generally* Doc. 22]. In fact, the Commissioner argues that a *Trimiar* analysis is not required *at all* where over 47,500 national jobs are identified. [Doc. 22, p. 16 (citing *King v. Berryhill*, CV 16-1147 KBM, 2018 WL 851358, at *12-14 (D.N.M. Feb 12, 2018))]. While the Court will address this contention more fully below, because it has identified an apparent conflict that eliminates all but 6,000 national jobs, Mr.

Lucero's case must be remanded so the Administration may engage in the fact-finding required by *Trimiar*. As the Tenth Circuit stated in *Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004):

> [u]nless we could hold as a matter of law—and thus not fact, which is beyond our purview—that one hundred is so large a number as to conclusively establish the requisite numerical significance, *Drapeau* [*v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001),] precludes affirmance here just as *Trimiar* does.

*Id.* at 1144-1145. Accordingly, because the ALJ failed to resolve the apparent conflict between Mr. Lucero's RFC and two of the jobs he relied on, and because the remaining number of jobs (6,000) is not "significant" as a matter of law, the Court must remand this case to the Administration to either apply the *Trimiar* factors to the 6,000 jobs available to Mr. Lucero, or return his claims to an ALJ to identify a significant number of national jobs Mr. Lucero is capable of performing.

**B. Even if the Court ignored the ALJ's failure to resolve the apparent conflict described above, the total number of jobs he initially identified (59,000) was not "significant" as a matter of law as required to meet the Administration's burden at Step Five absent a proper *Trimiar* analysis. Therefore, remand is required.**

Mr. Lucero alternatively argues, and the Court alternatively finds, that even ignoring the ALJ's error in applying SSR 00-4p, the initial number of national jobs he relied on (59,000) was insufficient to meet the Commissioner's Step Five burden without application of the *Trimiar* factors, mandating remand for further analysis. [*See* Doc. 17, pp. 14-16; Doc. 23, pp. 3-5]. As mentioned above, the Commissioner strenuously resists this conclusion, arguing that Mr. Lucero's *Trimiar* argument is "irrelevant" here because the ALJ identified 59,000 *national*, as opposed to *regional*, jobs. [Doc. 22, p. 16 (citing *King*, 2018 WL 851358, at *12-14)]. As Mr. Lucero points out in his Reply, this Court has already discussed and declined to adopt Magistrate Judge Molzen's analysis in *King* in a prior decision. [*See* Doc. 23, p. 4 (citing, inter alia, *Roybal*, CV 17-1045 JHR, Doc. 26, p. 13 (D.N.M. Jan. 24, 2019)]. As this Court explained in *Roybal*:

[i]n *King*, Judge Molzen found 47,500 jobs to be nationally significant, and applied harmless error to affirm the ALJ's conclusion that the claimant was not disabled. *King*, 2018 WL 851358, at *13. In doing so, however, Judge Molzen determined that the *Trimiar* factors do not apply to cases involving national numbers. *See id.* ("Where the focus is on national availability of jobs, however, the particularized *Trimiar* inquiry would confuse the issues."). This Court cannot agree with this conclusion, for one very important reason: the Sixth Circuit, from which the *Trimiar* factors were borrowed, does not draw such a distinction. *See Taskila*[ *v. Commissioner of Social Security*], 819 F.3d [902,] 904 [(6th Cir. 2016)](quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988); *see id.* at 905 ("While the frame of reference has changed, the standard of review has not. The current inquiry— focused on nationwide jobs, not just jobs in the claimant's locale—is no less claimant-specific than the one Judge Friendly adopted."). Rather, "[a]n ALJ must consider these 'intrinsic' effects because they [may] prevent the claimant from accessing certain jobs in the local *or national* economy." *Taskila*, 819 F.3d at 906. In other words, the Sixth Circuit applies the *Trimiar* factors (borrowed from *Hall*), despite the law's current focus on jobs in the national economy.

Thus, Judge Molzen's decision, while thoughtful, is neither binding on nor persuasive to this Court. The significant numbers inquiry is a fact question reviewed for substantial evidence, not a legal question to be reviewed as a matter of statutory interpretation. *Taskila*, 819 F.3d at 905. Thus, "[t]he Tenth Circuit has emphasized that 'the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation' and, as such, 'the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Padilla v. Berryhill*, CV 16-0106 KK, 2017 WL 3412089, at *11 (D.N.M. Mar. 28, 2017) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)). Therefore, unless the number of jobs in a case reaches levels affirmed by the Tenth Circuit as significant as a matter of law, the Court declines to apply harmless error in the absence of a proper *Trimiar* analysis.

2019 WL 318387, at *6. Thus, this Court has already concluded that an ALJ must perform a *Trimiar* analysis unless he identifies over 152,000 jobs in the national economy that are consistent with the claimant's RFC.

Despite his resistance, the Commissioner appears to implicitly acknowledge that prior decisions from other judges in this district, including Judge Molzen, support this result. [*See* Doc. 22, p. 16 (citing *Sears*, 2018 WL 2002487, at *8-11, where Judge Browning adopted Judge Molzen's recommendation to remand a claim involving 50,000 national jobs "because the ALJ did not enter a finding on whether 50,000 jobs—a reduced number from that decided on by the ALJ

due to one erroneous job cited by the vocational expert and accepted by the ALJ—was a significant number[.]"). Yet, at least in his present briefing, the Commissioner refuses to concede that the ALJ's Step Five finding was unsupported by substantial evidence in Mr. Lucero's case. [*See* Doc. 22, p. 17 ("[A]s explained above, the Court need not reach this question because the ALJ's step-five finding of fact—that 59,000 jobs in the national economy was a significant number—is supported by substantial evidence and free from harmful legal error.")].

As in *Ammons*, the Court is reluctant to expend judicial resources rehashing its prior reasoning. Here, though, the Commissioner appears to have ignored this Court's prior decisions despite Mr. Lucero's citation of several of them in his briefing. [*See* Doc. 17, pp. 13-15 (citing *Laney*, *Roybal*, *Crockett* and *Brandenburg*); Doc. 23, p. 4 (citing *Figueroa*, *Laney*, and *Roybal*)]. The Commissioner's reluctance to acknowledge the Court's prior decisions renders it necessary to again explain why it would still remand this case for a proper *Trimiar* analysis even if the ALJ had identified 59,000 national jobs that are consistent with Mr. Ammons' RFC.

In *Trimiar* the Tenth Circuit explicitly stated that "[an] [administrative law] judge should consider many criteria in determining whether work exists in significant numbers[.]" 966 F.2d at 1330. Specifically, an ALJ should consider: "the level of the claimant's disability; the reliability of the vocational expert's testimony; the distance the claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the type and availability of such work, and so on." *Trimiar*, 966 F.2d at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988), in turn quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). While this principle has been tempered over time and does not apply in cases involving over 152,000 national jobs in the Tenth Circuit,[12] *Trimiar* has never been overruled and remains good law. Thus, even if he hadn't erred

---

[12] Under current Tenth Circuit precedent, an ALJ is not required to perform a *Trimiar* analysis where the number of national jobs at issue is "much larger" than the 650 to 900 regional jobs at issue there. *See Raymond*, 621 F.3d at 1274.

as described above, the ALJ was still required to apply the *Trimiar* factors to Mr. Lucero's case to assess his ability to access the 59,000 national jobs identified by the VE.

The Commissioner insists that in *Raymond*, 621 F.3d at 1274, the Tenth Circuit proclaimed that *Trimiar* only applies where an ALJ relies on relatively small numbers of regional jobs. [Doc. 22, p. 16]. Put another way, the Commissioner invites the Court to conclude that 59,000 national jobs are "significant" as a matter of law (and thereby find the ALJ's decision to be "supported by substantial evidence and free from harmful legal error."). [*Id.*, p. 17]. Considering the Tenth Circuit decisions discussed above, this Court's previous rulings construing them, and the fact that the other circuits this Court has surveyed continue to apply the factors adopted by the Tenth Circuit in *Trimiar*, the Court declines this invitation. *See, e.g.*, *Taskila*, 819 F.3d at 904; *Ammons*, CV 18-1212 JHR, Doc. 23, p. 16; *Laney*, 2019 WL 586660, at *1; *Roybal*, 2019 WL 318387, at *4. As the Court has repeatedly stated, the pertinent regulation does not permit an ALJ to rely on "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s.]" *See* 20 C.F.R. §§ 404.1566(b), 416.966(b) ("Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy."). Thus, an ALJ must evaluate each case on its individual merits to determine whether work exists in significant numbers in the national economy as applied to a given claimant's factual circumstances. *Trimiar*, 966 F.2d at 1330. This is because each case (like each claimant) is unique, and the "intrinsic" effects of a

---

Thus, while the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number[,]'" *Trimiar*, 966 F.2d at 1330, it has indicated that the Commissioner's final decision should be affirmed as harmless where an ALJ identifies at least 152,000 jobs that are consistent with a claimant's RFC. *See Evans*, 640 F. App'x at 736 ("As *Trimiar* pointed out, there is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes*[ *v. Astrue*, 274 F. App'x 675 (10th Cir. 2008) (unpublished),] to be sufficient so far for application of harmless error.").

claimant's impairments may "prevent [him] from *accessing* certain jobs in the local or national economy." *Taskila*, 819 F. 3d at 906.

It is undisputed that the ALJ did not complete a *Trimiar* analysis as to the 59,000 jobs he relied on to deny Mr. Lucero benefits in this case. This is clear error, at least so far as the Court has previously construed present Tenth Circuit precedent. *See Allen*, 357 F.3d at 1145. Therefore, "because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding the numerical significance requirement, [the Court] cannot properly review this issue[,]" *Rhodes v. Barnhart*, 117 F. App'x 622, 532 (10th Cir. 2004) (unpublished); *see also Allen*, 357 F.3d at 1144, and the Commissioner's final decision must be reversed and remanded for further factual development.

## VI.     <u>CONCLUSION</u>

The Court is bound not only by its present interpretation of binding Tenth Circuit precedent but also by the principles of horizontal and vertical stare decisis. *See, e.g.*, *Ammons*, CV 18-1212, Doc. 23, pp. 15-16 (Explaining that under horizonal stare decisis "a court … must adhere to its own prior decisions, unless it finds compelling reasons to overrule itself[,]" and that vertical stare decisis requires a court to strictly follow the decisions of higher courts in its jurisdiction.) (quoting BLACK'S LAW DICTIONARY, 710 (Fourth Pocket Ed. 2011)). "To be sure, stare decisis is 'not an inexorable command.' But any departure from the doctrine demands 'special justification'— something more than 'an argument that the precedent was wrongly decided.'" *Kisor*, 139 S. Ct. at 2422 (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), and *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014)). The Commissioner has not even attempted to argue this Court's prior decisions were wrongly decided and has not convinced the Court to alter its reasoning here. Therefore, the ALJ was required to explain the apparent inconsistency between Mr. Lucero's

RFC and the jobs he relied on and to conduct a significant numbers inquiry in order to support his decision to deny Mr. Lucero benefits at Step Five. Because the ALJ failed to do these things, this Court has no choice but to reverse the Commissioner's Final Decision and remand this case for further proceedings.

Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff Benjamin M. Lucero's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 17], is **GRANTED**, the Commissioner's Final Decision in this case is **REVERSED**, and Mr. Lucero's claims are **REMANDED** for further proceedings consistent with this decision.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent